

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7272 - 98 C 8217 | **DATE** | 11/1/2001 |
| **CASE TITLE** | United States of America vs. The Northern Trust Co. etc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant now brings a motion to compel. The motion is granted in part and denied in part. Status hearing set for November 13, 2001 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | NOV 02 2001 |
| | Mail AO 450 form. | date docketed |
| | Copy to judge/magistrate judge. | docketing deputy initials |
| WAH | courtroom deputy's initials | date mailed notice |

Document Number

FOR DOCKETING

01 NOV -1 PM 4:58

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 98 C 7272 |
| | ) | |
| THE NORTHRN TRUST COMPANY, | ) | |
| as Trustee of the Caterpillar Inc. | ) | |
| Master Trust, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 98 C 8217 |
| | ) | |
| THE NORTHERN TRUST COMPANY, | ) | |
| as Trustee of the Inland Steel Industries | ) | |
| Pension Trust, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
NOV 0 2 2001

## MEMORANDUM OPINION AND ORDER

The government brought this action to recover tax refunds that it believes were erroneously granted to defendant Northern Trust Company (Northern), as Trustee for the Caterpillar Inc. Master Trust and the Inland Steel Industries Pension Trust (the Trusts).[1] Northern sought discovery of certain Internal Revenue Service documents, to which plaintiff objected. Defendant now brings a motion to compel. For the following reasons, that motion is granted in part and denied in part.

## BACKGROUND

The Trusts owned shares of Quest for Value Dual Purpose Fund (Quest), a tax

---

[1]We consolidated the two cases, and the instant motion applies equally to both.



advantaged mutual fund. During the tax year in question the Trusts transferred those shares to third parties (the borrowers) as part of routine securities lending transactions. The borrowers then used those shares to take a short position in Quest, selling them to other parties (the buyers). The Trusts claimed, and received, tax refunds based on filings indicating that they "owned" the Quest shares on December 31, 1995, the close of the tax year. When the IRS learned of the lending transactions, it initiated suits against the Trusts to recover the refunds. Defendants now want to discover IRS records which they claim support their arguments that they are entitled to keep those refunds.

## DISCUSSION

The main dispute here is over the Trusts' requests for the borrowers' and buyers' tax returns. We will address that question first. The government also objects to several other discovery requests, asserting that they are burdensome and impinge upon work product privilege.

Defendants maintain that the Trusts were the legal owners of the Quest shares on December 31, 1995, and therefor entitled to the tax benefits prescribed by 26 U.S.C. §852. They requested both the borrowers' and buyers' tax returns, alleging that neither received those benefits. Defendants argue that, by statute, someone is entitled to the refund and that the IRS' refusal to grant it to either the borrowers or the buyers is evidence that the Trusts were the proper beneficiary. The government argues that third party tax returns are irrelevant and, alternatively, that 26 U.S.C. §6103 prohibits their disclosure.

First, we examine relevance. A party may discover anything that may reasonably lead to admissible evidence. Fed. R. Civ. P. 26(b)(1). The government contends that these third party returns cannot satisfy even this most liberal standard. It proffers the familiar principle

that a taxpayer may not rely on the IRS' position towards similarly situated taxpayers to establish its own rights. Each taxpayer must affirmatively prove that it is entitled to the requested tax treatment. *See* <u>Penn-Field Indus. v. Commissioner</u>, 74 T.C. 720, 722 (1980). But this doctrine is not applicable here. The Trusts are not attempting to argue by analogy, *i.e.*, that they ought to be treated as owners because the IRS considered other taxpayers who entered securities lending agreements to be owners. They are arguing this specific case, that they owned these shares because their rights never passed to these other parties. The discovery requests are limited to parties who borrowed or purchased the specific shares lent by the Trusts. They do not seek returns from other Quest shareholders, or from other parties who entered into securities lending agreements.

The government also argues that the borrowers' and buyers' returns are irrelevant because the dispositive question is whether the Trusts had a sufficient ownership interest to qualify for the tax benefits, not whether others may have had some interest. Any interests held by third parties, the government maintains, are therefor irrelevant. We agree with the government that this is the proper inquiry, but not with its implications. Whether these third parties requested the tax benefits to which the owner would be entitled, and whether the IRS allowed such claims, are indicia of ownership. Others' interests in the shares could make it more or less likely that the Trusts owned the shares. This is enough to make them discoverable under Fed. R. Civ. P. 26.

We now turn to whether §6103 bars disclosure. As a general rule the government may not disclose a taxpayer's return. 26 U.S.C. §6103(a). But the statute also includes exceptions, most pertinently, "if treatment of an item reflected on such [third party's] return is directly related to the resolution of an issue in the proceeding." 26 U.S.C. 6103(h)(4)(B). The parties

here dispute both the proper standard and its application. The government maintains that "directly related" is a higher threshold than the normal requirement for relevance and, alternatively, that these tax returns would not be relevant even under Fed. R. Evid. 401. Defendants argue that Rule 401 is the proper standard, and also that the returns could satisfy a more stringent test.

The only court to address this question found that Rule 401 "serves as a helpful guide in understanding the meaning of the phrase, 'directly related.'" Shell Petroleum, Inc. v. United States, 47 Fed. Cl. 812, 819 (2000). The court reviewed the political context in which Congress enacted §6103 (IRS abuses during Watergate), and its legislative history. Id. at 817-19. As noted above, Rule 26 makes anything that could reasonably lead to admissible evidence discoverable. Section 6103(h)(4)(B) was intended to be a more rigorous standard than this, but does not require any transactional nexus. Such a requirement would make one of the other statutory exceptions, permitting disclosure if "return information directly relates to a transactional relationship between a person who is a party to a proceeding and the taxpayer," superfluous. 26 U.S.C. §6103(h)(4)(C) (emphasis added).[2] Invoking a common canon of construction, the court construed the language to avoid making this other provision into mere surplusage. Shell Petroleum, 47 Fed. Cl. at 816. Although it declined to adopt an explicit rule, the court suggested some useful criteria for determining whether a tax return is "directly related." The tax return's contents must be germane to an element of the claim, not simply be used to impeach a witness' credibility[3], and must apply to the specific

---

[2]Defendant raises this exception as another potential ground for disclosure. Arguably, the securities lending agreement and short sale are all part of the same larger transaction, involving the lender, the borrower and the buyer (and possibly also the broker). Because we find subsection (h)(4)(B) permits disclosure, however, we do not reach this question.

[3]The legislative history suggests that this was one of the primary practices Congress sought to curb. See S. Rep. No. 94-938, at 324 (1976) reprinted in 1976 U.S.C.C.A.N. at 3754.

taxpayer's liability, not analogous third parties'. We find <u>Shell Petroleum</u>'s reasoning persuasive and agree that these criteria are appropriate.

Applying this standard, we find that the requested tax returns are directly related to defendants' claims. Defendants have only requested returns filed by parties who had interests in the shares in question. The returns contain information that may help establish the Trusts' ownership of the Quest shares, which is an element of the claim in question. Moreover, there does not appear to be any improper political motive or competitive advantage at stake, obviating the need for any *in camera* inspection. *Cf.* <u>Shell Petroleum</u>, 47 Fed. Cl. at 820 (ordering *in camera* inspection because taxpayer and third party were business competitors).

Turning to the government's other objections, we start with Interrogatory No. 1. It requests, in part, "all persons answering or contributing to the answers of these interrogatories." This is a fairly mundane request. The government asserts work product privilege and argues that defendants are only entitled to a list of "persons with factual information or knowledge," not all persons with whom counsel consulted. *See* <u>Board of Educ. of Evanston v. Admiral Heating and Ventilating, Inc.</u>, 104 F.R.D. 23, 32 (N.D. Ill. 1984). This reads too much into the language. The interrogatory only seeks to identify those persons contributing to the answers. These are not necessarily all the people counsel consulted, but presumably, the people who provided the factual knowledge reflected in the answers. The government must answer the interrogatory to that extent.

The government next objects to Interrogatories No. 9, 12 and 13 and Request for Production No. 2, which seek certain IRS rules, procedures, guidelines and instructions. The government asserts that this amounts to a request to turn over its legal research, which it is not required to do. *See* <u>National Advanced Systems v. United States</u>, 795 F.Supp. 1208, 1210

(Ct. Int'l Trade 1992). Concededly, the language is broadly phrased and would appear to include many publicly available documents. Defendants must do their own research to find the relevant legal authorities. Many informal opinions, internal policies and procedures, however, are not publicly available. Those that are prepared in the normal course of the IRS' operations, not in preparation for litigation, are not work product. *See* <u>Teichgraeber v. Commissioner</u>, 64 T.C. 453, 455 (1975); <u>Bank of America v. United States</u>, 1978 WL 4492 at *1 n.4 (N.D. Cal. May 24, 1978). These are discoverable.

Next, the government objects to Request for Production No. 1 because it assumes that the Trusts "owned" the Quest shares. This is semantics. Add the word "allegedly" and there is nothing objectionable here. The government must disclose the documents related to the Quest shares in question -- the ones allegedly owned by the Trusts. Although not discussed in its response to the motion to compel, the government initially raised a work product objection here, too. As stated above, many of these documents were created in the normal course of business, not in anticipation of litigation. These are not privileged.

Lastly, the government raises a work product objection to Request for Production No. 3, which seeks "all documents ... which support Plaintiff's contention that the refund ... was erroneous." This too is broadly worded. To the extent that the IRS generated documents in its normal operations, including notes, correspondence and audit reports, they are discoverable. To the extent these documents were created for purposes of litigation, they are work product.

## CONCLUSION

For the foregoing reasons, defendants' motion to compel is granted in part and denied in part. The government must disclose the portions of the third party tax returns related to

the Quest shares in question, a list of persons with factual knowledge who contributed to the

discovery responses and any non-public documents created in the normal course of IRS

operations. The government need not disclose the names of persons consulted in preparing

interrogatory responses who do not possess factual knowledge, published legal materials or

any documents created specifically for this litigation and outside of its normal operations.

JAMES B. MORAN
Senior Judge, U. S. District Court

_____ Nov. 1 ___, 2001.